IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2009 JUL 29 P 3: 57

CLERK _____Burton
_____

| | | |
|---|---|---|
| ANTHONY D. THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 106-099 |
| | ) | |
| BRET CARANI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Anthony D. Thompson, an inmate currently incarcerated at the Washington State Prison located in Davisboro, Georgia,[1] commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is *pro se* and proceeding *in forma pauperis*. The matter is now before the Court on Defendant Warren's motion for summary judgment. (Doc. no. 95). Plaintiff opposes the motion.[2] (Doc. no. 118). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendant Warren's motion for summary judgment (doc. no. 95) be **GRANTED** and that a final judgment be **ENTERED** in favor of Defendant Warren.

---

[1] The Court notes that the events forming the basis of the above-captioned complaint occurred while Plaintiff was incarcerated at the Columbia County Detention Center ("CCDC") located in Appling, Georgia. (Doc. no. 39, pp. 5-11).

[2] The Court recognizes that Plaintiff filed a sur-reply brief related to the instant motion for summary judgment. (Doc. no. 128). However, as discussed a simultaneously filed Order, Plaintiff's sur-reply brief was not filed in accordance with Local Rule 7.6, and thus, the Court will not consider it when addressing the instant motion.

# I. STATEMENT OF FACTS

## A. Plaintiff's Version[3]

Plaintiff avers that Defendant Warren is an employee for Southern Health Partners, which is contracted with the CCDC to provide medical care to its inmates. (Doc. no. 39, p. 8). Plaintiff contends that, on August 23, 2004, he informed Defendant Warren that he had recently been bitten by a spider. (Id.; doc. no. 118, Pl.'s Aff., p. 2, ¶ 1). Plaintiff maintains that, although several other inmates were provided with antibiotics, he advised Defendant Warren that he was "extremely allergic," and he requested immediate treatment, he was forced to wait until Dr. Andrews returned from vacation, approximately ten days, before he received treatment for his spider bites. (See doc. no. 39, p. 8; doc. no. 118, Pl.'s Aff., p. 2, ¶¶ 1-2). Plaintiff explains that, because Defendant Warren previously claimed to be a nurse practitioner, he believed that Defendant Warren could prescribe medication. (Doc. no. 39, p. 8). Plaintiff concludes that, because of the delayed treatment, he unnecessarily suffered severe pain and continues to experience "problems with [his] left knee to waist."[4] (Id.).

---

[3]As the amended complaint (doc. no. 39) is sworn and describes facts based upon Plaintiff's personal knowledge, it meets the requirements of 28 U.S.C. § 1746 and Fed. R. Civ. P. 56(e) and is sufficient to create an issue of material fact in response to the instant motion for summary judgment. See U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1444 (11th Cir. 1991) (en banc). Thus, the Court's recitation of Plaintiff's version of events is taken from the amended complaint, as well as Plaintiff's affidavit submitted in opposition to the instant motion (doc. no. 128, Pl.'s Aff.) and the various exhibits attached to Plaintiff's response to the instant motion.

[4]Plaintiff submits,

I have a brown recluse bit[e] on my right hip which caused major swelling from my right knee (top) up to my waist, from groin to buttocks (right). On top of that there was a half tennis ball mound with a hole the size of a 50 cent peice [sic] in it. There is presently a hole the size of a quarter. Of course the swelling and infection are gone . . . . There are two bit[e]s side by side on my left knee. Together they got to one tennis ball (half) size mound, however the

Plaintiff elaborates that, after examining his knee at Scott State Prison in October 2007, a physician's assistant informed him, *inter alia*, that he had been bitten by a spider and that the delayed treatment resulted in "damage and pain." (Doc. no. 118, Pl.'s Aff., ¶ 2).

Plaintiff also provides several Health Service Request forms, dated from March 2005 until October 2007 from his Georgia Department of Corrections ("GDC") medical files, wherein he complains about various medical conditions, including complications associated with spider bites,[5] and requests various treatments. (Doc. no. 118, Ex. A). Furthermore, Plaintiff submits the notarized statement of a CCDC trustee, who states, *inter alia*, that he advised Defendant Warren of Plaintiff's physical condition and need for treatment at some unspecified time in August 2004. (Id., Ex. B). Finally, Plaintiff "offer[s] [his] body into evidence . . . ." (Id., Ex. D).

## B.    Defendant Warren's Version

At all times relevant to this case, Defendant Warren was employed at the CCDC as a licenced practical nurse. (Doc. no. 95, Warren Aff., ¶ 4). Defendant Warren submits that, while providing nursing care to CCDC inmates, he assesses patients, identifies potential medical problems, requests examinations by appropriate medical providers, and ensures that

---

swelling ran from my right ankle to my groin around to my left buttocks, I could barely walk. I would say it was approx[imately] 25 inches [a]round my knee. These bites became extremely infected and cause great unnecessary pain . . . .

(Doc. no. 118, Pl.'s Aff., p. 2 (citations omitted)).

[5]Although the Health Service Request forms reflect Plaintiff's subjective, layman's opinion of his perceived condition, they do not provide verifying medical evidence in support of his allegations concerning his physical condition or the treatment provided by Defendant Warren.

the orders of medical providers are carried out. (Id. ¶¶ 4 & 6). Defendant Warren maintains that, although he has been a licenced practical nurse for approximately 28 years and that his license has never been revoked, sanctioned, or inhibited, he cannot legally prescribe medication. (Id. ¶¶ 2, 3 & 5).

Defendant Warren avers that, on August 24, 2004 approximately one (1) day after Plaintiff first submitted a sick call slip concerning an alleged spider bite, he examined Plaintiff. (Id. ¶ 8). Defendant Warren contends that his examination of Plaintiff revealed two dime-shaped red marks on his right hip and left knee. (Id.). Defendant maintains that further examination indicated that Plaintiff's vital signs were normal and that he appeared to be in good physical health. (Id.). Defendant submits that, because the alleged spider bites were not serious, he instructed Plaintiff to use a warm compress. (Id.). Plaintiff's CCDC medical records confirm that, on August 23, 2004 after complaining about spider bites, Plaintiff was examined by Defendant Warren, who noted "two dime[-]shaped red marks" and instructed Plaintiff to use a warm compress. (Id., Ex. A, p. 23).

Defendant Warren further avers that, after Plaintiff again submitted a sick call slip on August 27, 2004 complaining about spider bites, he examined Plaintiff. (Id., Warren Aff., ¶ 9). Defendant Warren contends that his examination revealed slight swelling around the two marks, normal vital signs, and "zero distress." (Id.). Defendant Warren submits that, due to the slight swelling, he requested that Plaintiff be examined by Dr. Andrews "the next time he was available," which was August 31, 2004. (Id. ¶¶ 9-10). Defendant Warren maintains that Dr. Andrews prescribed antibiotics for Plaintiff's "minor injury" and that, since starting antibiotics, Plaintiff has not complained about the marks and appeared to be in good physical health before his transfer to Scott State Prison. (Id. ¶ 10). Plaintiff's CCDC

4

medical records confirm that, on August 27, 2004 after again complaining about spider bites, he was examined by Defendant Warren, who noted no distress, instructed Plaintiff to continue using the warm compress, and referred Plaintiff to a physician for "possible antibiotic [treatment]," which he received on August 30, 2004. (See id., Ex. A, pp. 25, 29 & 32). Defendant Warren concludes, *inter alia*, that he never believed Plaintiff's alleged injuries to be serious, he never delayed or refused to provide Plaintiff with proper care, and the care provided to Plaintiff met or exceeded the standard of care generally provided by licensed practical nurses under similar circumstances. (Id., Warren Aff., ¶¶ 11-14).

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[6] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving

---

[6]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## B.    Defendant Warren Did Not Act with Deliberate Indifference

Bearing the above standard in mind, Defendant Warren is entitled to summary judgment. To survive Defendant Warren's motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude: (1) that Plaintiff had an

6

objectively serious medical need, (2) that Defendant Warren acted with deliberate indifference to that need, and (3) that Plaintiff's injury was caused by the Defendant Warren's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007) (citations omitted). Although examination of the record reveals that Plaintiff received treatment while incarcerated at CCDC in August 2004 after complaining about spider bites (doc. no. 95, Ex. A, pp. 23-25 & 29), the Court need not determine, when addressing the merits of the instant motion, whether Plaintiff had an objectively serious medical need because he has not shown that Defendant Warren acted with deliberate indifference.[7]

To show that Defendant Warren was deliberately indifferent to his needs, Plaintiff must prove three things: (1) Defendant Warren was subjectively aware of a serious risk to Plaintiff's health, (2) Defendant Warren disregarded that risk, and (3) Defendant Warren followed a course of action that was "more than gross negligence."[8] Id. at 1326-27 (citing Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) (per curiam)). In addition, the prisoner plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir.1994), abrogated in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir.

---

[7]The Court notes that Plaintiff and Defendant Warren disagree concerning the seriousness of Plaintiff's medical need. (Doc. no. 95, Def. Warren's Br., p. 5; doc. no. 118, p. 3; doc. no. 122, pp. 1-4).

[8]When determining whether a course of action constitutes "more than gross negligence" in cases concerning increased injury due to the delay in providing medical care, the Eleventh Circuit has set out some factors to guide the analysis, including: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay. Goebert, 510 F.3d at 1327 (citing Hill, 40 F.3d at 1189).

2003) ("In <u>Hope v. Pelzer</u>, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in <u>Hill</u>, but not <u>Hill</u>'s analysis of what constitutes a serious medical need of prisoners.").

However, it should be recognized that the mere fact that a prisoner "may have desired [a] different mode[] of treatment" does not give rise to a claim for deliberate indifference. <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir. 1985). "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments." <u>Id.</u> (citation omitted). Put another way, a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim of cruel and unusual punishment. <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991); <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1033 (11th Cir. 1989).

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." <u>West</u>, 320 F.3d at 1243 (internal quotation and citation omitted). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." <u>Harris</u>, 941 F.2d at 1510 (quoting <u>Brown v. Beck</u>, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must

8

allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

Plaintiff argues that, because Defendant Warren afforded negligent care and did not provide him with immediate treatment after being advised of his spider bites, he experienced "horrific pain," difficulty walking, an ear infection, and swelling, and that he currently suffers from pain and nerve damage, walks with a limp, and exhibits deep scars. (Doc. no. 118, pp. 3-4 & 6). Defendant Warren counters, "There is nothing shocking or grossly incompetent about the way [Plaintiff] was treated [by Defendant Warren]." (Doc. no. 95, Def. Warren's Br., p. 7). Defendant Warren also submits, "[T]here is no evidence that [Defendant] Warren mistreated [Plaintiff], let alone knew he was providing grossly inadequate treatment." (Id. at 8).

First, it should be noted that Plaintiff has provided the Court with no verifying medical evidence in support of his contentions that, due to Defendant Warren's negligent care and failure to provide him with timely treatment, he has and continues to suffer detrimental effects. Rather, the record demonstrates that Plaintiff received near constant medical attention and that Defendant Warren simply exercised professional medical judgment--at no time did Defendant Warren subjectively know about a risk of serious harm to Plaintiff or disregard that risk. As previously noted, Plaintiff first complained about suffering from spider bites on August 23, 2004. (Doc. no. 95, Ex. A, p. 23; doc. no. 118, p.

9

3). On August 24, 2004, Plaintiff was examined by Defendant Warren, who instructed Plaintiff to use a warm compress after noting "two dime shaped red marks." (Doc. no. 95, Ex. A, p. 23). After complaining about spider bites on August 27, 2004, Plaintiff was again examined by Defendant Warren, who instructed Plaintiff to continue using the warm compress and referred Plaintiff to a physician for possible antibiotic treatment after noting slight swelling and no respiratory distress. (Id. at 25). On August 31 and September 7, 2004, Plaintiff was examined by a physician and provided with antibiotics. (See id. at 29 & 32). Simply put, the record does not support the conclusion that, after Plaintiff complained about spider bites, Defendant Warren subjectively knew of a risk of serious harm to Plaintiff and disregarded that risk.[9]

Turning to the "gross negligence" prong of the Goebert deliberate indifference analysis, nothing in the record suggests that, after Plaintiff complained about spider bites, the medical treatment afforded by Defendant Warren was improper, let alone that Defendant Warren followed a course of action that was "more than gross negligence." Examining the factors set forth in Goebert, 510 F.3d 1327, the Court concludes that, although the parties dispute the seriousness of Plaintiff's medical need, nothing in the record indicates that Plaintiff's condition significantly worsened due to Defendant Warren's conduct. Unlike Goebert, after Plaintiff complained about spider bites, he was examined on multiple occasions, instructed to utilize a warm compress, and referred to a physician for additional

---

[9]In this regard, Defendant Warren submits, "At no time did I believe [Plaintiff's] alleged injury to be serious." (Doc. no. 95, Warren Aff., ¶11). Furthermore, Defendant Warren maintains, "At all times, [he] acted in [Plaintiff's] best interests and did everything within the scope of [his] ability and authority to ensure he received proper treatment for his alleged injury." (Id. at 13).

treatment.[10]  (Doc. no. 95, Ex. A, pp. 23 & 25).  Although Plaintiff experienced "slight" swelling between his August 24 and 27, 2004 examinations, his medical records also indicate that he did not exhibit any distress and that Defendant Warren, who was unable to prescribe medication (id., Warren Aff., ¶5), referred Plaintiff to a physician for additional treatment. (Id., Ex. A, p. 25).  Indeed, Plaintiff's contentions concerning his subsequent physical condition are severely undercut by his admission that he did not complain about the alleged effects of the spider bits for the remainder of his confinement at the CCDC.[11]  (Doc. no. 118, p. 5).  Finally, although the parties agree that Plaintiff was not immediately examined by a physician because he was unavailable, Plaintiff was examined by a physician a few days after

[10]In Goebert, the plaintiff argued, *inter alia*, that a defendant showed deliberate indifference to her serious medical need by failing to respond to her "complaint" concerning leaking amniotic fluid for more than a week.  Goebert, 510 F.3d at 1327.  Addressing the plaintiff's claims, the Eleventh Circuit held, *inter alia*, that the information in the plaintiff's "complaint" gave the defendant abundant reason to believe that her medical need was serious and that the defendant had a duty to "look into the matter."  Id. at 1327-28.  Furthermore, the Eleventh Circuit determined that the evidence supported the conclusion that the delay in treatment caused the plaintiff to lose her child.  Id. at 1329.  Conversely, here, Plaintiff was immediately examined after his complaints about spider bites and nothing in the record suggests that his condition significantly worsened as a result of Defendant Warren's actions.

[11]On this point, the Court notes that examination of the excerpts from Plaintiff's GDC medical records attached to his sur-reply also undercut his contentions.  In this regard, Plaintiff's GDC medical records indicate that, on November 4, 2004, a nurse noted that Plaintiff suffered from "Spider Bites" and that, on June 8, 2006, Plaintiff complained about numbness, tingling, and loss of sensation associated with "[s]pider bite [eight] months ago." (Doc. no. 128, Ex. A, pp. 1-2).  However, the examining healthcare provider noted that, although Plaintiff's right hip was "tender," he exhibited no heat, swelling, tenderness, loss of motion, or discoloration in his left knee.  (Id.).  Although Plaintiff's medical records indicate that he was prescribed, *inter alia*, Motrin, a warm compress, a knee brace, shoe insoles, a soft-shoe profile, and various medications since leaving the CCDC, his records do not clearly describe the cause(s) of these treatments.  (Id. at 2-4, 6 & 10).  Finally, Plaintiff's GDC medical records also show that Plaintiff requested, on January 22, 2008, a knee brace due to "left leg nerve pain medicine not helping as much" resulting from previous spider bites.  (Id. at 9).  However, the examining healthcare provider noted no swelling, deformity, tenderness, heat, crepitus with movement, discoloration, or loss of motion.  (Id.).

Defendant Warren's referral, and more importantly, nothing in the record suggests that Plaintiff's condition significantly worsened in the interim. Simply put, the record does not support the conclusion that Defendant Warren afforded Plaintiff improper medical treatment, let alone that Defendant Warren followed a course of action that was "more than gross negligence."

In sum, Plaintiff has provided the Court with no verifying medical evidence in support of his contention that, as a result of Defendant Warren's failure to provide him with timely treatment for spider bites, he suffered and suffers various detrimental effects. Moreover, nothing in the record suggests that Defendant Warren subjectively knew about a risk of serious harm to Plaintiff, disregarded that risk, or followed a course of action that was "more than gross negligence." Although Plaintiff has described his dissatisfaction with the treatment provided by Defendant Warren, the record demonstrates that Defendant Warren merely exercised his professional medical judgment and that Plaintiff received near-constant medical attention after complaining about spider bites. Even assuming, *arguendo*, that the treatment provided by Defendant Warren was somehow deficient or differed from the treatment plans other caregivers would have pursued, or that Plaintiff would have preferred, these assertions alone are insufficient to generate a dispute of material fact regarding Plaintiff's claims of deliberate indifference. Differences in opinion concerning treatment fall well short of establishing deliberate indifference. See Harris, 941 F.2d at 1505; Waldrop, 871 F.2d at 1033. Indeed, allegations of negligence or malpractice do not amount to deliberate indifference. Campbell, 169 F.3d at 1363-72; Harris, 941 F.2d at 1505. Therefore, viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine issue as to any material fact and that Defendant Warren was not

deliberately indifferent to Plaintiff's serious medical needs. Accordingly, Defendant Warren is entitled to judgment as a matter of law.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendant Warren's motion for summary judgment (doc. no. 95) be **GRANTED**, that Defendant Warren be **DISMISSED** from this civil action, and that a judgment be **ENTERED** in favor of Defendant Warren.[12]

SO REPORTED and RECOMMENDED this 29th day of July, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[12]The Court will address the motion for summary judgment filed by Defendants Woods, Carani, Ellis, Williams, Cook, and Streetman (doc. no. 100) in a simultaneously filed Report and Recommendation.