IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

ANTHONY D. THOMPSON,       *
                           *
        Plaintiff,         *
                           *        CV 106-099
           v.              *
                           *
BRETT CARANI, et al.,      *
                           *
        Defendants.        *

---

**O R D E R**

---

On July 29, 2008 the United States Magistrate Judge
entered a Report and Recommendation ("R&R") in response to
Defendants' Motion for Summary Judgment. (Doc. no. 134;
Doc. no. 100.)  The Magistrate Judge recommends summary
judgment be granted in favor of Defendants Lieutenant
Harvey Woods, Captain Brett Carani, and Lieutenant John
Cook, but recommends that summary judgment be denied for
inmate Anthony Thompson's ("Plaintiff") excessive use of
force claims against Defendants Deputy Robert Ellis,
Sergeant Hugh Williams, and Deputy Anthony Streetman ("the
remaining Defendants").  On August 15, 2008, the remaining
Defendants filed an objection to the R&R. (Doc. no. 139.)
Plaintiff filed objections to the R&R on August 25, 2008.

(Doc. no. 145.) After a careful *de novo* review of the file and Plaintiff's objections, the Court **ADOPTS** the Magistrate Judge's recommendation to grant summary judgment to Defendants Woods, Carani, and Cook. However, having considered the record evidence, the R&R, and the objections made by the remaining Defendants, the Court **GRANTS** summary judgment in favor of the remaining Defendants as well.

## I. BACKGROUND

The Court finds no dispute with the facts as set out by the Magistrate Judge but finds that additional facts from the record are pertinent to the disposition of the case against the remaining Defendants.

### A. The August 8, 2004 Incident

Immediately following the incident with Defendants Ellis, Williams, and Cook, Plaintiff filed a written, sworn statement with the Columbia County Sheriff's Office. (Woods Aff., Ex. 6 (hereinafter "Pl.'s Sworn Statement").) Plaintiff states that as he was returning to A-Max (the area in which he was housed), Defendant Ellis closed the door on his foot. (Id.) Plaintiff asserts that Defendant Ellis was high, but admits that in response to having his foot closed in the door, he called Defendant Ellis a

profane name.[1]  (Id.)  At that point, Defendant Ellis came into Plaintiff's cell, with his hand on his pepper spray, and ordered Plaintiff to C-Max.  (Id.)  Plaintiff ignored Defendant Ellis' order.  Plaintiff states that because he did not think he should have to go to C-Max, he told Defendant Ellis that he was going to wait for the Lieutenant to get there so he could talk to him.  (Id.)  Plaintiff also admits that Defendant Ellis ordered him to go to C-Max two or three times.  (Pl.'s Dep. at 144.)  Further, Defendant Ellis warned Plaintiff that he was going to spray him with pepper spray. (Pl.'s Sworn Statement; Ellis Aff. ¶ 16.)  In response, Plaintiff sat on his bed and put a rag and towel to his face.  (Pl.'s Sworn Statement.) Defendant Ellis interpreted this act as an indication that Plaintiff intended to become combative. (Ellis Aff. ¶ 20.)  Defendant Ellis then sprayed Plaintiff with the pepper spray.  (Pl.'s Sworn Statement.)  Defendant Ellis states that he used the pepper spray at this time to enforce his order for the Plaintiff to go to C-Max.  (Ellis Aff. ¶ 34.)

---

[1] According to Defendant Ellis, it is a violation of Detention Center policy for an inmate to use vulgar language or show disrespect for Detention Center personnel.  (Ellis Aff. ¶ 11.)  Further, Defendant Ellis stated that sending an inmate to C-Max (the area of the Detention Center where inmates with disciplinary problems are housed) is an appropriate punishment for such behavior.  (Id.)

3

After Plaintiff had been sprayed, Defendant Williams and Deputy Robertson arrived at his cell. (Ellis Aff. ¶ 35.) Plaintiff states that after he was sprayed, he held his hands over his face to keep the spray from getting in his eyes. (Pl.'s Sworn Statement.) Plaintiff asserts that Williams and Robertson tried to remove his hands so that they could spray him in the face. (Id.) According to Williams and Ellis, however, they were trying to free Plaintiff's hands from his face so they could handcuff him and transport him to C-Max. (Ellis Aff. ¶ 36; Williams Aff. ¶ 12.) Plaintiff states that he stayed low, with his hands still on his face, and made his way out of his cell so that he would have witnesses to the officers' actions. (Pl.'s Sworn Statement.) When Plaintiff received assurance from one of the officers involved that he would not be sprayed in the face, Plaintiff allowed himself to be handcuffed and transported to C-Max. (Id.)

Plaintiff states that once he was placed in C-Max, he had to wait an hour before they offered him a shower to remove the pepper spray. (Id.) However, Plaintiff also states that he did not need to shower because he had not been sprayed effectively. (Id.) In fact, Plaintiff states "I never received the effects of the spray. I never coughed, sneezed, choked or gagged. None what so ever got

in my eyes or on my face." (Id.) Plaintiff's August 8, 2004 account of the effects of the pepper spray differs from statements he made in an affidavit on February 19, 2008. There, Plaintiff states that the pepper spray irritated his eyes and caused bad asthma attacks for days after the incident. (Pl.'s Aff. ¶ 15.)

## B. The August 31, 2004 Incident

In addition to the facts set out in the R&R, the Court notes several facts as stated in Plaintiff's deposition. Before using pepper spray on Plaintiff, Defendant Streetman told Plaintiff to get in his cell about four times. (Pl.'s Dep. at 169.) At the time he was sprayed, Plaintiff was standing in the doorway of his cell. (Id.) Plaintiff states that he had his towel on his shoulder and was getting ready to go to the shower. (Id.) In addition to disobeying his direct orders to get in his cell, Defendant Streetman states that he believed Plaintiff was going to become more combative because Plaintiff moved his towel toward his face. (Streetman Aff. ¶ 13.) Defendant Streetman then sprayed Plaintiff with pepper spray. (Id. at ¶ 21.) Plaintiff states that after he was sprayed, Defendant Streetman did not push him hard, only shoved him

a little bit, to get him inside the cell.  (Pl.'s Dep. at 169.)

## II. DISCUSSION

The Magistrate Judge's R&R sets out the correct standard by which an excessive force claim is analyzed. However, assessing Plaintiff's claims against the remaining Defendants in light of the additional facts set forth above, this Court reaches a different conclusion.  As the Magistrate Judge stated, Plaintiff must satisfy both an objective and subjective component to prevail on his excessive use of force claim. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Objectively, a plaintiff must show that the use of force against him was more than de minimis and caused him to suffer a sufficiently serious deprivation. Id.; see also Hudson v. McMillian, 503 U.S. 1, 9-10 (1991). Subjectively, a plaintiff must show the defendant's conduct involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986).  The use of force in and of itself does not violate the Eighth Amendment.  Rather, the Court should determine "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7)).

In considering Eighth Amendment claims, the Supreme Court has noted that prison officials often have to make decisions "'in haste, under pressure, and frequently without the luxury of a second chance.'" Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)). The Supreme Court has thus accorded wide-ranging deference to prison officials, recognizing their need to preserve order, discipline, and security. Hudson, 503 U.S. at 6. Moreover, in this district, summary judgment has been granted where an appropriate amount of force is used to compel compliance with a valid order. Stevens v. Dasher, 2006 WL 717218, *3 (S.D. Ga 2006). Thus, while this Court views the evidence in the light most favorable to Plaintiff, this Court also considers the prison official's need to act quickly and maintain control. Further, the inquiry is not whether Defendants employed the best method of maintaining order, but whether they acted in a good faith manner to maintain or restore order and not maliciously to cause harm.

By Plaintiff's own statements, he cannot meet the subjective standard of his excessive force claims with respect to the August 8, 2004 incident. Plaintiff admits

in a sworn statement, written immediately after the August 8, 2004 incident, that he called Defendant Ellis a profane name and, as a result, was ordered to go to C-Max. Plaintiff then retreated into his cell, wrapped a towel around his head, and refused to move. Attempting to get Plaintiff to comply with his lawful orders, Defendant Ellis sprayed Plaintiff with pepper spray. Although Plaintiff alleges that Ellis was high at the time, Plaintiff also admits that he refused to follow Defendant Ellis's orders, that Defendant Ellis warned him he would be sprayed, that he was sprayed only once, and that he did not actually feel the effects of the pepper spray. In short, Plaintiff admits that Defendant Ellis acted only after Plaintiff disobeyed an order. Thus, giving the appropriate deference to a prison official's need to act quickly, there is not enough evidence against Defendant Ellis that could lead a reasonable jury to find that Defendant Ellis failed to act in good faith when he sprayed Plaintiff with pepper spray.

Similarly, Plaintiff cannot establish a genuine issue of fact regarding Defendant Williams' actions during the August 8, 2004 incident. Defendant Williams arrived at Plaintiff's cell after Defendant Ellis had discharged the pepper spray. Defendant Williams and Deputy Robertson attempted to handcuff Plaintiff so he could be transported

to C-Max.  Again, according to Plaintiff's own statement, he resisted being handcuffed for fear of being sprayed in the face.  Additionally, in his struggle, Plaintiff made his way out of his cell.  Furthermore, Plaintiff was not sprayed with pepper spray after he was restrained.  Plaintiff was merely handcuffed and transported to C-Max in accordance with Defendant Ellis's order.  As with Defendant Ellis, there is simply insufficient evidence that a reasonable jury could find Defendant Williams acted maliciously or sadistically and not in a good faith effort to maintain or restore discipline in the Detention Center.

With respect to the August 31, 2004 incident, Plaintiff claims that Defendant Streetman "blindsided" him with the pepper spray, but Plaintiff also admits in his deposition testimony that Defendant Streetman asked him about four times to get in his cell before he employed the pepper spray.  Plaintiff states that Defendant Streetman then pushed him into his cell, but did not push him hard.  Even though Plaintiff avers that he had permission to be out of his cell, the order from Defendant Streetman was a lawful order that Plaintiff ignored four times.  Again, Plaintiff has simply not produced enough evidence for a jury to conclude that Defendant Streetman's actions were unnecessary, caused the wanton infliction of pain, and were

not taken in a good faith effort to maintain or restore discipline in the Detention Center.

## III. CONCLUSION

Upon the foregoing, the Court finds that the remaining Defendants are entitled to summary judgment. Accordingly, the Magistrate Judge's R&R is **ADOPTED IN PART** and summary judgment is **GRANTED** for the remaining Defendants. The Clerk shall **ENTER JUDGMENT** in favor of Defendants Woods, Carani, Cook, Ellis, Williams, and Streetman.

**ORDER ENTERED** at Augusta, Georgia, this _2nd_ day of December, 2008.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE